1   Mr. Timothy Tabias Actkinson SID # 7854875
    Pro se'
                                                    FILED '08 OCT 22 11:09 USDC-ORE
2   Snake River Correctional Institution
    777 Stanton Boulevard
3   Ontario, Oregon.        97914
    (541) 881-4537
4

                **IN THE UNITED STATES DISTRICT COURT**
5
                    **FOR THE DISTRICT OF OREGON**
6

7   TIMOTHY TABIAS ACTKINSON,              )
                                           )    No: **6:08-CV-0187-TC**
            **Plaintiff,**                 )
8                                          )    **CIVIL COMPLAINT**
        V.                                 )    42 USC 1983
9                                          )
    Dr. STEVE SHELTON, Dr. RUTHVEN, Dr.    )    Civil Rights Violations:
10  GULICK, Ms. HODGES, Ms. HARMON, Ms.    )    8th Amendment Denial of
    SOURE, Health Services Mngr/Staff, members of )  Court Ordered and Necessary
11  the Counseling & Treatment Services-(CTS), )   Medications/Necessary Medical
    members of the TLC committee, Ms. Heidi )     Care; Americans with Disabilities;
12  Mackenzie, Ms. M. Winter, Ms. Teresa Hicks, ) ADA Title II; Authority of confinment issues
    members of the eye-glass committee, STATE OF ) and Due Process Violations; Theft of property;
13  OREGON by and through the Oregon Department ) Religious-Violations of Free Exercise and
    of Corrections, and John Does No(s). 1-15.; )  Establishment clauses)
14  Ms. Bishop; c/o: sereno.,              )    **Amended Complaint**
            **Defendants.**                )(**Verified Complaint With Jury Demand**)
15
                                                Demanded: 1,245.46 plus cost, etc

16                          INTRODUCTORY STATEMENT

17                                      1.

18          This civil rights action filed by Plaintiff is brought under 42 U.S.C. § 1983, alleging delay

19  and denial of essential medical care of an incarcerated person and due process in violation of the

20  Eighth and Fourteenth Amendments to the United States Constitution, Contempt of Court and 42

21  U.S.C.A. § 12181, et seq.

22                                      2.

23          This court has jurisdiction over Plaintiff's claims of violations of federal constitutional

24  rights under 28 U.S.C. §§ 1331 and 1343. Plaintiff Actkinson is an "individual with a disability"

1   as defined by 29 C.F.R. §§ 1630.2(h)-(j); 42 U.S.C. § 12111(8) and or "disabled person" under

2   ORS 659.400(1). Every Plaintiff is disabled and due to that disability is limited in one or more

3   major life activities and that such effects on a major life activity is substantial.

4                                         3.

5          Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside

6   in the District of Oregon and Plaintiff's claims for relief arose in this district.

7                               THE PARTIES

8                                         4.

9          Plaintiff Timothy Tabias Actkinson was at all pertinent times an incarcerated person in

10  the custody and control of the Oregon Department of Corrections. He was transferred to the

11  custody of the Oregon Department of Corrections on February 10th, 2006 and is scheduled for

12  release on or about ~~August 24, 2009~~ April 2nd, 2009, see # 538', 1591.

13                                        5.

14         At all times herein Defendant Steve Shelton was a physician employed by the State of

15  Oregon, by and through the Department of Corrections as its Health Services Administrator, and

16  is sued herein in his individual and official capacities.

17                                        6.

18         At all times herein Defendant Daryl Ruthven was a psychiatrist employed by the State of

19  Oregon, by and through the Department of Corrections, and is sued herein in his individual and

20  official capacities.

21                                        7.

22         At all times herein Defendant Gulick was a physician employed by the State of Oregon,

23  by and through the Department of Corrections as the Chief medical officer of the Snake River

24  Correctional Institution, and is sued herein in his individual and official capacities.

8.

At all times herein Defendant Harmon was at all relevant times employed by the State of Oregon, by and through the Department of Corrections as a Registered Nurse and/or Nurse Practitioner, and is sued herein in her individual and official capacities.

9.

At all times herein Defendant Shirley Hodge was at all relevant times employed by the State of Oregon, by and through the Department of Corrections as a Registered Nurse and/or Health Services Manager, and is sued herein in her individual and official capacities.

10.

Defendant G. Atkins was at all times herein employed by the State of Oregon, by and through the Department of Corrections as the Correctional Treatment Services Manager for the Snake River Correctional Institution, and is sued in her individual and official capacities.

11.

At all times herein Defendant T. Hicks was at all relevant times employed by the State of Oregon, by and through the Department of Corrections as the Rules, Procedures, Policies & Grievances Coordinator, and Minority Affairs Manager for the Snake River Correctional Institution, and is sued in her individual and official capacities.

12.

Defendant K. Stevens was at all times herein employed by the State of Oregon, by and through the Department of Corrections as the Mail Room Supervisor for the Snake River Correctional Institution, and is sued in her individual and official capacities.

13.

Defendant Ms. Bishop was at all times herein employed by the State of Oregon, by and through the Department of Corrections as an: OS-II for the Snake River Correctional Institution,

1    and is sued in her individual and official capacities.

2                                              14.

3           Defendant Heidi Mackenzie was at all times herein employed by the State of Oregon, by

4    and through the Department of Corrections as the Plaintiff's Counselor, and is sued in her

5    individual and official capacities.

6                                              15.

7           Defendant M. Winter was at all times herein employed by the State of Oregon, by and

8    through the Department of Corrections as Acting Transitional Services Manager, and is the

9    Supervisor of ODOC's Snake River Correctional Institution counselor(s) and also supervises

10   various legal programs such as scheduling for the inmate law-library, etc. She is sued in her

11   individual and official capacities.

12                                             16.

13          Defendant Ms. Stephens and Nurse Managers-members of: the Eye-glass committee or

14   has recently become known as-( The Optical Committee ); the TLC committee; the CTS staff

15   that many are not known by name, however, all who become known to the Plaintiff as

16   *Defendants* that were, at times pertinent to this complaint, herein employed by the State of

17   Oregon, by and through the Department of Corrections are sued in their individual and official

18   capacities.

19                                             17.

20          Defendant Does are individuals whose identities and/or job titles are not now known to

21   Plaintiff and through diligent inquiry will be identified & individually named when so

22   discovered. Defendant Does are sued in their individual and official capacities.

23                                             18.

24          All defendants have acted under of color of law at all times relevant to this complaint.

Page 4-COMPLAINT

19.

If Counsel is appointed/or hired; Plaintiff will be entitled to an award of attorneys fees and costs, pursuant to 42 U.S.C. § 1988. trial and 42 U.S.C. § 12111.

20.

Plaintiff fully exhausted all available administrative remedies by filing a timely grievance and two subsequent levels of appeals. All grievances and appeals there from were denied by all Oregon Department of Corrections personnel including Defendant Hodge.

ADA Title II.

21.

On Febuary 03ʳᵈ, 2006 the Honorable Judge Marilyn E. Litzenberger ordered the Oregon Department of Corrections to maintain the Plaintiff on the psychiatric medications that which he was taking at the time of his sentencing and which community specialists as well as the counties and state specialists agreed upon. see # 269; 250; 268.

22.

On Febuary 10ᵗʰ, 2006 plaintiff Aetkinson was transported into ODOC custody along with Judge Litzenbergers court order. Dr. Buckler who treated the plaintiff in the community but who was at this point employed by ODOC

Page 5 of 38 -- Complaint

Form 03.010 9/98

1  and working at the ODOC Intake Center wrote an order
2  prescribing DEXEDRINE. This order and prescription were not
3  followed. Then two other psychiatrists both recommend and
4  prescribe DEXEDRINE for the Plaintiff. These too, are denied. On top
5  of this all these specialists reported to Plaintiff Actkinson that they
6  were given strict instrumentations not to prescribe DEXEDRINE
7  for Actkinson so ordered by Dr. Ruthven, ODOC's cheif
8  psychiatrist. see# 214; 215; 268.
9  _____
10  23.
11  After Dr. Buckler's prescriptions for DEXEDRINE was
12  denied he (Dr. Buckler) began to titrate Actkinson on
13  METHylphenidate another ADD/ADHD medication on Februery 21st 2006
14  and which other ODOC psychiatrists titrated up to 90 mgs daily.
15  This dosage had a marked clinical effect. see# 250; 179; 258.
16  _____
17  24.
18  Because continued to feel physically [illy] uncomfortable (a side
19  effects of METHylphenidate)- and because METHylphenidate dose not
20  work as well as DEXEDRINE for Plaintiff, Plaintiff asked court
21  for help over ODOC's violation of court's order. Court directed
22  Plaintiff Actkinson to file New Complaint in federal court to
23  seek relief. see# 270; 271.
24  _____
25  25.
26  After Plaintiff Actkinson complained that such high

Page 6 of 38  --  Complaint

1  dosages of METhylphenidate (90 mgs) made him feel
2  ill, while dosages of 30 mgs of DExEdriNE were more effective
3  and did cause him to feel ill, DR. Ruthven accused Plaintiff
4  Actkinson of Abuse of METhylphenidate because the ODOC
5  psychiatrist DR. Ashaye had prescribed Actkinson to Receive
6  his first daily dose of METhylphenidate at 60 mgs. Not
7  because Plaintiff Actkinson did anything wrong. Because DR.
8  ruthven did not want to take the time to explain this
9  he so in Actkinson's medical file he (DR. Ruthven) simply
10  wrote: " D/c for Reasons of abuse". When Actkinson wrote
11  DR. Ruthven about these untrue allegations then DR. Ruthven
12  replied by explaining it wasn't Actkinson's abuse but
13  rather the way DR. Ashaye prescribed the dosages. See# 272.
14  Still, DR. Ruthven never took the time to properly explain in
15  Actkinson's medical file so his initial note appears Actkinson
16  abused his meds. See# 1370; 251; 252; 253; 254; 255; 256; 1101; 1102.
17
18                    26.
19          Plaintiff Actkinson has suffered for DR.
20  Ruthven's attribution of abuse. Because of DR. Ruthven's
21  "abuse" (note) current providers use it as a reason to not give
22  Actkinson his needed medications. See# 261; 281; 272; 276; 277.
23
24                    27.
25          On ~~Odesary 17th 2006~~ July 17th, 2007 the Oregon Court
26  of appeals Affirmed without Opinion Judge Litzenberger's sentence
    and court orders. See# 284; 289

Form 03.010 9/98

28.

Plaintiff's psychiatric medications were discontinued by defendant Harmon (an identified Jane Doe defendant in USDC case # 6:04-CV-00698-AA) for / because plaintiff Aetkinson identified her as such and because plaintiff Aetkinson filed an Institution Grievance form reporting MS. Harmon saying: " A bad blast from the past" in refering to Aetkinson in front of medical staff and inmates present in medical at afternoon medication line. See #287; #288.

29.

After plaintiff continued to grieve paragraph 28's issue(s) Aetkinson's care was transfered to Dr. Corvino who adamantly adhered to MS. Harmon's recommendations even though ODOC agreed that MS. Harmon should not have been in the position she was in in regards to plaintiff Aetkinson. See # 286; 287; 288.

30.

After plaintiff met with Dr. Corvino he met with MS. Souer who let plaintiff Aetkinson he messed up because MS. Harmon was / is MS. Souer's feiend. After this meeting between plaintiff Aetkinson and MS. Souer plaintiff

1 Aetkinson punched the interview rooms window
2 breaking it. About 1-month later when MS. Souer
3 learned about Plaintiff Aetkinson breaking the
4 interview rooms window MS. Souer falsified
5 a story and tried to manipulate the facts and
6 attempted to ~~redress claim~~ claim that she
7 (MS. Souer) was in the interview room when
8 Aetkinson broke the window and used this
9 specific behaivior as the false reasoning as to
10 why she discontinued Aetkinsons psychiatric
11 medications. see #275; 276; 277; 278; 279.
12
13                           31.
14          The night before an appointment with
15 Dr. Corvino on: 01/28/08 Plaintiff Aetkinson
16 was slipped three- 20 mg- tablets of Ritalin
17 at the evening medication line, without a prescription and
18 without his knowledge. The next morning he met with
19 Dr. Corvino who reported Aetkinson was doing well
20 off of Ritalin. This was done by some coincedental
21 mistake (or) as a tactic to make it appear Aetkinson
22 was doing fine being off of Ritalin while in fact
23 he had been given an extremely large dovage of
24 Ritalin before his appointment. see # 281 ~~283.~~ 282, 280.
25          Plaintiff Aetkinson was called down to Medical to
26 makesure he felt alright after this 60 mg mix-up. But does
not see medical notes concering incident see #87; 88.

Page __9__ of __38__  --  __Complaint__

Authority or Continment Issues.

32.

Plaintiff's Release date of: 01/11/09 was taken because of bogus falsified misconduct Reports that he began receiving on the date the plaintiff was received into ODOC's custody 02/10/06 and which has Continued throughout his stay in ODOC custody. See #294; 295; 296; 313; 320-323; 385; 421; 597-609; 643; 644; 660; 678-679; 684-691; 894-895; 916-917; 920-923; 975; 1019; 1052-1055; 1064-1065; 1148-1149; 1310-1314; 1356; 1358-1359; 1365-1367; 1315-1319; 1607-1635; 305; 1137; 1636-1637.

Plaintiff has only received (2) major miscond Reports that actually Resulted from violation of ODOC's list of Rule violations and those (2) misconducts were issued during the same six-month-Review period, therefore only 10% deduction in one six-month-Review period is valid. The plaintiff plead guilty in both of those circumstances. So date of: 01/11/09 is sought. see# 305; 431

THEFT OF MONIES; Properties; ETC.

33.

Plaintiff's medical devices To wit: Eye-glasses; leg/knee brace; and orthopedic shoes were stolen, lost, destroyed by defendants. The cost/value of these items are as follows: see 1131, 1133.

|  |  |
|---|---|
| Eye-glases | $220.00 |
| Leg/knee brace | $550.00 |
| orthopedic shoes | $250.00 |

That is: $1,020.00 [One thousand & twenty dollars.]
#'s 435; 1081; 1506;

Page 10 of 38  --  Complaint

Form 03.010 9/98

34.

Plaintiff has had items which he purchased from ODOC's canteen stolen, lost, confiscated, destroyed by the defendants. The cost/value of these items are as follows: See #389.

Envelopes #120 = "$ 60.00"

#'s 488; 489; 370; 428; 1552; 1544; 1591-1597; 842; 1318; 1319; 1385; 1444; 1448; 1449; 1461; 1463; 1468;

TIMEX IRONMAN watch "$ 34.99"

#'s 441; 442; 479; 528; 529; 530; 620; 622; 656; 1319; 1499; 1581; 1582; 1662; 1663; 1166; 404;

ODOC CANTEEN shoes "$ 89 $ 27.99"

#'s 479; 488; 528; 529; 530; 620; 622; 1456; 1458 1554;

ODOC CANTEEN Sun-glasses "$ 8.00"

#488; 529; 530; 620; 622; 1369;

ODOC CANTEEN Legal-Tote $ 785 "$ 7.50"

#'s 512; 513; 514; 815; 529; 530;

ODOC MISC - canteen items "$ 50.00"

#'s 896; 892; 1136; 1319; 1318; 1448; 1444; 1445; 1449; 1465; 1466; 1469; 1498; 1499; (See # 1370)

Repeding of above wrongly taking funds: #'s 898; 1163; 1167; 1168; 1169; 1170; 1375; 1376; 1379; 1388; 1419; 1401; 1420; 1421; 1452; = "$ 20.00" 1488; 1486; 1487; 329;

ODOC CANTEEN photo Tickets "$ 12.00"

#'s 900; 901; 910; 911; 913; 914; 987; 1192; 1457; 1461;

[ My honesty - see # 1462 ] *

That is a Total of: $ 220.48 - [ Two hundred twenty dollars & fourty eight cevits. ]

Form 03.010 9/98

35.

Plaintiff has been physically tortured by defendants using devices inappropriately as weapons against him and with the use of hands and other parts of the defendants bodies while plaintiff was restrained in restraints such as: belly chains; hand-cuffs; ankle-chains; etc. Plaintiff carries the scars See #959

The Plaintiff has also been subject to tactics employeed by the defendants such as: calling him condescending names and references; putting him on religious See # 1536. diets against his beliefs; denying him the right to attend see#681. religious services; denying him shoes while everyone is issued shoes; telling his family and friends lies such as telling his see family he has spent most of his sentence in the mental ward #618; 642. when he has never once been in the mental unit. These lists don't end and the plaintiff will need time to being everything out. see# 681; 950; 455-456; 480 3100; 462, 463, 1537.

The defendants have manipulated events within the prison system to make it appear that the plaintiff has betrayed other prisoners who belong to gangs. This has caused a grave complication in the plaintiffs security. See # 275-279; 294-296; 1607-1635.

Page 12 of 38 -- Complaint

Form 03.010 9/98

1          ~~19.~~

2    ~~If Counsel is appointed and/or hired; Plaintiff will be entitled to an award of attorneys~~

3    ~~fees and costs, pursuant to 42 U.S.C. § 1988 trial and 42 U.S.C. § 1211.~~

4          ~~20.~~

5    ~~Plaintiff fully exhausted all available administrative remedies by filing a timely grievance~~

6    ~~and two subsequent levels of appeals. All grievances and appeals therefrom were denied by all~~

7    ~~Oregon Department of Corrections personnel including Defendant Hodge.~~

8          ~~21.~~ 36,

9          In July 2007 Plaintiff was visiting the SRCI infirmary for complaints about an injury to

10   his left elbow that happened while working as a housing unit orderly, the accute pain, the lack of

11   movement and the obvious swelling in the left elbow joint. He was asked: "is your arm broken?"

12   He answered: "I don't know... ....I don't think so?!?!" The Plaintiff had one foot in the infirmary's

13   waiting room door and one foot inside the infirmary's entrance, he was not physically examined.

14   The Defendants failed to inspect and/or to treat  the Plaintiff's injury. At all times the Defendants

15   have acted with deliberate indifference to the Plaintiff's serious medical needs and requirements. see ¶'j 1563; 1 585.

16          ~~22.~~ 37,

17          In August 2007 Plaintiff was advised by  Correctional Officer: OTTEN and told to: " quit

18   harassing security-[correctional officers]-and medical-[health services department personell]-

19   about your meds." The Plaintiff has received disciplinary lock-downs called: "Cell-Inns" for

20   requesting that one of his supervising correctional officers to contact his CTS case manager Ms.

21   Eddy and/or to contact the health services department over crucial medications such as: eye-

22   drops; psychiatric medications; and medications that help balance his nervous system. C/O:

23   OTTEN is merely one officer who has been directed to put disciplinary in place for Plaintiff

24   Actkinson seeking medical attention.

38.

1

2    In September 2007 Plaintiff was subjected to the medical authority of Ms. Harmon again

3    on September 9th, 2007 after identifying her as an unnamed Defendant in USDC case No. 06-

4    35367 and after receiving a statement from the SRCI health services manager that his care was

5    changed to (1)-Dr. Carvoni. When Plaintiff finally saw Dr. Carvoni and tried to address his

6    medical needs, upon meeting the Dr. Carvoni, Dr. Carvoni said: "I don't want to hear no shit

7    about no law suits or court orders." See# 280-283; 286-288.

8                                        39.

9        Plaintiff Actkinson suffers from significant physical limitations as a result of a severe

10   auto accident where he was struck by a motor vehicle when he was a pedestrian. This occurred

11   when he was about 12.As a result of those serious injuries Plaintiff Actkinson suffers from

12   ongoing physical disabilities/injuries for which he is prescribed a combination of anti-anxiety /

13   panic-disorder and pain control medications. As a result of this traumatic accident Plaintiff

14   Actkinson developed severe neurological abnormalities, spinal injuries, and his developmental      see# 241-244.

15   and cognitive/psychological deficits became worse, such as; his Attention deficit disorders &

16   Attention deficit hyperactivity disorders were greatly exacerbated. See# 546-552.

17                                       40.

18       Plaintiff Actkinson has been diagnosed as suffering from serious physical and

19   psychological disorders. See# 290-293.

20                                       41.

21       Plaintiff Actkinson was treated for his ongoing and progressing neurological disorders by

22   medical professionals in the community effectively. Upon his incarceration Plaintiff provided

23   copies of his entire medical treatment files from the community specialists and agreed to sign

24   any releases of medical information that may be needed to aid the Oregon Department of

1    Corrections medical staff and personnel in continuing effective and needed quality care as has

2    been deemed to be the most appropriate and beneficial medicinal-treatments and medical-care in

3    his individual situation. However, the Oregon Department of Corrections has continually gone

4    out of the way to hinder appropriate treatments, even going against their own medical and

5    psychiatric expert's recommendations, see # 215, 268. also; Plaintiff's offers to sign any needed releases of

6    medical records/history have been either declined and or not honored in ODOC's treatment of the

7    Plaintiff's serious needs. See # 546-552; 241-244.

8    42.

9         During Plaintiff's ODOC intake process the defendants complied with the Multnomah

10    Counties Circuit Court Judge; The Honorable Marilyn E. Litzenberger's Order, however, only to

11    the point of prescribing the medications as was and is properly indicated by that order, to wit;

12    Dexedrine. see #215 The fact is that the Plaintiff never received the ordered medications. As a result of the

13    Plaintiff's mental illness(s), anxiety/panic disorder(s) and chronic pain he has difficulty

14    functioning, functioning in general population; difficulty maintaining the quality of his

15    relationship's; difficulty in communicating his needs, his concerns, his thoughts; and as a

16    response the Defendants will treat his mental illness by isolation, punishment and denial of basic

17    rights and care including adequate access to medical care, in fact, the Defendant(s) have engaged

18    in tactic(s) that clearly violate his rights by submitting falsified Misconduct-Reports in, at least,

19    one report for assaulting another inmate. See # 1137, 1636, 1637. During Plaintiff's incarceration he has been denied any

20    and all medical care that has been deemed to be appropriate by ODOC's contracted medical

21    experts such as: Dr. Olurotimi Ashaye's ordering that Plaintiff be treated with-[**DEXEDRINE**]

22    instead of-[**RITALIN**], see # 268. Dr. Smith's earlier request which was identical to Dr. Ashaye's, and Dr.

23    Buckler's prescribing-[**DEXEDRINE**] not-[ **RITALIN**] see # 215. for this Plaintiff's individual needs and has

24    been denied any kind of appropriate treatments to date including for treatment of his chronic pain

1   management. Also, Defendants have not followed recommendations of ODOC's contracted

2   Orthopedic and/or neurological surgeons, namely, Dr. Hansen's requesting an MRI of the *see# 245, 547-553.*

3   Plaintiff's left knee and further tests to make sure diagnosis is correct and to make sure nothing *sec #223*

4   else is wrong. To date such requests go denied by the Defendant(s). The Defendants expect the

5   Plaintiff to go through with surgery approved by the Defendants with Dr. Hansen although the

6   Defendants refuse to follow his recommendation's-as in further testing and specifically identified

7   requests for an MRI on the Plaintiff's left knee. *See#223.*

8                                20. 43.

9         Between June 2002 and February 2006 Plaintiff was periodically seen by specialists in

10   the community, including: Dr. Vetteles; Dr. Jack Pladel; Dr. Read; ADD/ADHD specialist-Dr.

11   Tom Porter and many other doctors & specialists who would prescribe appropriate medicinal-

12   treatments for his specific & individual needs both in the medical and psychological fields of

13   medicine. These medications were, but not limited to, the following ones listed: <u>NEURONTIN</u>,

14   <u>OXYCODONE</u>, <u>CLONAZEPAM</u>, <u>DEXEDRINE</u>, <u>DOXIPIN</u>, <u>B6-(Pyridoxine)B12-</u>

15   <u>(Cyanocobalamin)</u>, and other <u>Vitamins</u> along with <u>Physical and Psychological Therapies</u> which

16   were successful in adequately treating the Plaintiff's needs. *see# 1669 – 1689.*

17                                20. 44.

18         At the time of Plaintiff's sentencing in Multnomah County the honorable Marilyn E.

19   Litzenberger ordered that the Plaintiff, "Shall be maintained on the psychiatric medications he

20   was taking at the time of his sentencing and which had been deemed to be the appropriate

21   medications for his mental health disorder's and that Mr. Actkinson's medical record's were to be

22   delivered to the Oregon Department of Corrections." ..." **Shall** ,"of course is **mandatory**

23   **language**, however, the Oregon Department of Corrections defines it as: 'May'- The word '**may**'

24   it is agreed, is **permissive language**, not **mandatory language**. *See# 304.*

45,

1                              20.

2       Plaintiff has sent scores of written communications and/or grievances to medical staff
          #258,259,523.  #272,485,522,#278.    #1153,1154,

3   including: Dr. Shelton; Dr. Ruthven; Dr. Gulick; Dr. Buckler; Ms. Hodge; Ms. Eddy; Harmon;

4   Ms. Hicks; Dr. Ashaye and others that he needed: the correct psychiatric medications; the correct
                       # 520-525, 876, 944, 957, 1155, 1652.

5   physical & mental health medications; explaining his pain and suffering; directing attention to

6   his swollen left knee; to many of his physical/psychological health problems which are being

7   viewed as just malingering.  Plaintiff believes this is, in part, due to Dr. Vargo's condescending

8   written remarks about him, and Dr. Vargo's intentionally detrimental medical notes/recordings

9   about this Plaintiff's past medical mistreatments, which has also been Dr. Gulick's reasons for

10  denying needed treatments for this Plaintiff, at least, in (1)-written response from Dr. Gulick that
                                        See # 267.
11  clearly indicates this to be the case. ___

12                              20. 46.

13      As a result of the communications and complaints made to physicians and to ODOC's

14  administrative personell by the Plaintiff between February 2006 and June 2008 he has been told

15  by means of a written communication, by means of verbal communication, by means of body

16  language, by means of aggressive actions and retaliatory & dolus tactics that no remedy is to be

17  found without seeking relief through court processes. For example: when the Plaintiff requested

18  some copies of his legal-library communications to present them to ODOC administration/staff

19  to prove a valid grievance point he was told: "You will need to get these through the discovery
            see # 834.
20  process." At all times the Defendants have acted with deliberate indifference to the Plaintiff's

21  serious medical needs and requirements.

22                              20. 47.

23      In an order issued by the Ninth Circuit Court of Appeals that was filed on November 15th,

24  2006 in response to the Plaintiff's request for a protective order regarding the Plaintiff's

17

1    ADD/ADHD medication. The order from the United states Court Of Appeals For The Ninth

2    Circuit read in part as follows: "...this issue was not part of the district court judgment that is the

3    basis of this appeal and may not be considered by this court. Appellant may... .....file a new action

4    in federal district court to seek the same relief from a federal court." This is, exactly,  the course _sec#330,331._

5    of action the Plaintiff desires to take, especially, since the issues herein have become such that

6    various retaliatory tactics are being employed by the defendants, thus, it could be detrimental for

7    Plaintiff to seek any further administrative relief. Also; by form of written communications, as is

8    already quoted in paragraph No. 44 of this complaint, the Defendants have informed the Plaintiff

9    that he would have to go through, "the discovery process." In order to simply be able to properly

10    follow ODOC's grievance procedures.

11                                     48.

12          In response to communications the Plaintiff has submitted to Dr. Steve Shelton-(The

13    Health Services Administrator For The Oregon Department of Corrections) regarding ODOC

14    refusing to comply with **court orders**-ordering that this Plaintiff was to be maintained on all the _see#269._

15    prescribed psychiatric medications he was taking at the time of his admittance into the Oregon

16    Department of Corrections on February 10th, 2006. Dr. Shelton wrote in one of his replies the

17    following: "...your psychiatrist would be the best judge of what is best for your individual

18    situation." It should be noted that: No. 1)- Dr. Ashaye was the Plaintiff's psychiatrist when Dr. _see# 521._

19    Shelton declared this statement; and  No. 2)-Dr. Ashaye ordered that **Dexedrine** should be used _see# 268._

20    instead of **Ritalin** and is best for Plaintiff's individual situation. Then, other dolus and twisted

21    reasonings were used as tactics to obstruct Plaintiff's seeking alternative remedies regarding

22    ODOC's failing to follow Dr. Ashaye's expert best judgment. Such dolus tactics have routinely

23    been employed by the Defendants and are continuing to be employed.

24

1                                    49.

2        When the Plaintiff attempted to address some of these grievous issues he is told: "Perhaps

3    there was a misunderstanding between you and Dr. Gulick." This was in response to the Plaintiff
         /see# 523.

4    complaining about Dr. Gulick calling him: "A drug-seeker." Which he did after reading medical

5    records from Dr. Vargo, in the presence of the Plaintiff, which are part of the Plaintiff's medical

6    file. It is true Dr. Vargo did accuse the Plaintiff, erroneously, of being a malingerer, however, his
     — see# 267.

7    accusation's were proven false by medical scientific facts. And the medical experts who treated

8    the Plaintiff following those, erroneous, accusations all said: "It is impossible for the patient to

9    have caused the medical crisis that he is in."

10                                   50.

11       Shown by the following written words of Dr. Shelton: "Mr. Actkinson: SRCI staff has

12   reviewed your medical record and they see no recent order for Dexedrine written by Dr.
                                     "I see              /see# 944.

13   Ashaye." The twisting of words as in: "no recent order for Dexedrine" shows deliberate

14   indifference in that any such expert's order for the prescription of proper medications was not

15   complied with.

16                                   51.

17       Ms. Doris H. Colmes, is the Plaintiff's identified legal-contact/emergency-contact to be

18   notified in case of any medical emergency while Plaintiff is incarcerated in ODOC. Ms. Colmes

19   has been intimately following the Plaintiff's treatment and/or lack of Plaintiff's treatment since

20   his reentry into the Oregon Department of Corrections and has found it lacking. When any lay-

21   person can discern with basic common sense this shows deliberate indifference.  See#446.

22                                   52.

23       On July 3rd,2007 Ms. Doris Colmes wrote the State Court Administrator-(Records

24   Department)-requesting the following: "Please certify and mail File Number A132155 (February

1    3, 2006 stay of medication) to the following person:...Timothy T. Actkinson, # 7854875...It is

2    important for Mr. Actkinson to receive this asap, as he is on the wrong medication, which is

3    making him ill, and which no one at all will correct." Then, On July 18th,2007 the Plaintiff

4    received a copy of the: 'Stay of Medication Order' which was certified a true copy by the State

5    Court Administrator on: July 11th, 2007. Then, On July 23rd,2007 Plaintiff Actkinson received a

6    document stating, in part: "Multnomah County Circuit Court; 050834753; A132155; Marilyn E.

7    Litzenberger, Judge; Submitted on brief: April 6,2007 Before Brewer, Chief Judge, and

8    Armstrong and Rosenblum, Judges...**AFFIRMED WITHOUT OPINION**...Effective Date: July

9    17, 2007" These three documents would indicate that the Sentence along with its Order was:

10    "**AFFIRMED !**" See # 284.

11                                       ¶. 53,

12             During the time of the Plaintiff's Post Prison Supervision in the years of: 2004 and 2005,

13    he was found to be in violation of his Post Prison Supervision, at least, once for the reason of not

14    taking the following medication(s): No.1) **Dexedrine**; No. 2) **Clonazepam**; & No.3) **Nuerontin**.

15    The Plaintiff received Post Prison Supervision sanctions, specifically, for not taking these boldly

16    highlighted and underlined medications. In attempts to pin-point the dates of being held in

17    violation for not taking the identified medications the Plaintiff has written to the ODOC records

18    department, to his assigned counselor, and to other ODOC personell who either request he pay

19    for these records or they give him illogical replies such as: "I do not know your exact dates of

20    PPS because unscond status does not count towards your PPS." See # 1403 This quoted reply was from

21    Plaintiffs Counselor at the Snake River Correctional Institution; (1)-Ms. Mackenzie in response

22    to a communication by Plaintiff dated 07-19-2007 and answered by Plaintiff's S.R.C.I. Counselor

23    on 07-23-2007.

24

79. 54,

All defendants have acted with deliberate indifference in regards to denying Plaintiff the professionally, expertly, (PPS)-Post Prison Supervision mandated and court ordered psychiatric medications as identified in paragraph No. 28 52,53 of this complaint, and which medications have also been ordered to be maintained by the Circuit Court Judge; the honorable Marilyn Litzenberger. As has been identified throughout this complaint. When Plaintiff was incarcerated into ODOC sec#28. custody, he informed the prison staff, including all health Services medical staff and Correctional Treatment Services staff of his mental health conditions and supplied all parties in the: Health Services Department; Counseling and Treatment Services Department; and in the Records Department of ODOC with his medical records and court orders pertaining to his: Needed Medical Care; Appropriate Treatments of his Medical & Psychiatric Conditions; and Sentencing Judgments.

78. 55,

Plaintiff Timothy Tabias Actkinson entered ODOC custody with seeing eye glasses sec# 954, 1088, 1392. which Defendants lost and/or deliberately misplaced or destroyed. Plaintiff has attempted to locate his seeing eye glasses with no success to date and has requested to be tested for new glasses, however, the Defendants are telling him in written correspondences that when the funds sec# 476, 623, 674, are present in Plaintiff's medical/optical reserve account that he can resubmit for eye glasses. The 1076. right to the basic human function of being able to read and to see is not justifiably being denied by the Defendants, rather it is being denied under cruel and unusual punishments, which have not been ordered through a court of law.

78. 56,

Finally, Plaintiff was referred to see a psychiatrist by Dr. Elliot Blakelees then he appeared on the inmate call-out appointment/scheduling board to meet with Ms. Harmon, a nurse

1   practitioner, the very one who engaged in actively telling the Plaintiff to leave medical and to

2   leave medical staff alone-( meaning to not complain about his serious medical needs ), with

3   whom the Plaintiff recognizes as a Defendant in U.S.D.C. # 6:04-CV-00698-ALA which is now

4   in appeal in U.S.C.A. # 06-35367. Ms. Harmon told Plaintiff that, "her assignment was from

5   order of Dr. Ruthven" ~see# a Defendant in this new action. Plaintiff has made a formal request to

6   obtain a recording of the video conference appointment with Ms. Harmon because of her threat's

7   meant to cause this Plaintiff fear. /see# 1402. The Plaintiff filed a grievance because of an earlier encounter

8   with Ms. Harmon which was laced with malice and aggressiveness and another grievance for the

9   way Plaintiff was treated during the video conference appointment with Ms. Harmon, however, /see# 286-288, 416,417, 1020 - 1024,

10  Plaintiff has received a response telling him that these video conferences are not recorded. Ms.

11  Harmon and Dr. Ruthven are both named defendants in this new complaint.

12                              ¶ 57.

13          As a result of the Defendant's non-compliance with courts orders and the Defendant's

14  non-compliance with several of ODOC's psychiatrists and specialists both contracted and actual

15  ODOC employees for specific treatment the Plaintiff has mental health disorders and physical

16  health problems that are going improperly treated and Plaintiff is suffering needless physical and

17  psychological anguish and pain. At all times the Defendants acted with deliberate indifference to

18  the Plaintiff's serious medical and psychological needs and requirements. At every interaction

19  with the process of receiving adequate care and/or treatment Plaintiff is being unprofessionally

20  mistreated and further inflicted with tactics meant to cause pain and suffering and to harm and to

21  cripple the Plaintiff in various manners, which will be proven at trial. see# 251-256, 276-277, 286-288, 372, 382, 386-388, 394-396, 400, 401, 409-

22                              ¶ 58.   -415, 426,434, 439,440, 468 469, 483, 485,486, 520-525, 541-543 ......

23          Plaintiff is told by all providers that they have been given special handling instructions

24  from either Dr. Shelton and/or Dr. Ruthven which always in one way or more involves the scope

22

1  of care a provider may exercise within their expertise in regards to Plaintiff's care.

2                                    ¶. 59.

3        In mid-February to early-March Plaintiff Actkinson discovered a lump in his right breast

4  and brang this to the attention of Dr. Gulick who confirmed the lumps presence. Dr. Gulick said

5  he was submitting a request to the TLC committee asking for some tests to look for other

6  suspicious growths and to see if there is a need for medical intervention or not. Plaintiff was told

7  a couple weeks later that the TLC committee had denied any kind of medical exploration,

8  however, Dr. Gulick told Plaintiff Actkinson that he could have Dr. Elliot Blakelees cut it out.

9  When Plaintiff asked if the lump would "be tested to see if it was cancer or not" he was told that

10  "it would not be." The growth began as what appeared to be a BB sized object. Now four months

11  later it is approximately the size of a nickel or quarter in diameter.-(note: Plaintiff was just

12  shown how to assess the correct size of his lump by another inmate who has had experience in

13  these matters. So he is unsure if the lumps have grown or if he has just discovered their true

14  sizes.)  Plaintiff Actkinson has continued to request a biopsy and/or to have it removed then

15  biopsied. To date he has not received any answer besides, "No.". See #375, 376, 424-444, 480, 532-534.

16                                    ¶. 60.

17        On the Sixth of May Plaintiff Actkinson filed a grievance complaining that his request to

18  see if there is any more lumps was denied and asking, "What good does it do to find cancer in its

19  early stages if testing and treatments are going to be denied!?!!" See paragraph #59.

20                                    ¶. 61.

21        Since Plaintiff's needed medications have been discontinued and before the discovery of

22  lumps in his chest he has experienced had extremely high blood-pressure readings. When he took

23  prescribed blood-pressure medications he experienced chest pains but no improvement in his

24  blood pressure. Within two-weeks of taking said B/P medications Plaintiff Actkinson was taken

1    to the emergency room by ambulance due to excessively high blood-pressure readings and

2    excessively elevated heart rate readings. The E.R. Doctor (1)-Dr. Stone recommended a test to

3    inject a dye into Plaintiff Actkinson to see how his heart was processing his flow of blood. To

4    date this test has also been denied by the TLC committee. *See # 191, 193, 194, 196, 203, 204*

5                                    ¶. 62.

6          On May 27th, 2008 Plaint6iff Actkinson filed a grievance complaining that his blood-

7    pressure he believes is associated with the discontinuance of his psychiatric medications but

8    since they have refused to maintain those medications then the recommended and requested tests

9    should be followed. The recommended test is an angiogram-(sp ?)-where dye is run through the

10   heart to see how the heart is processing a persons blood flow. *(NOTE)→ Dr. Culver told me this was the*

11   *Test recommended however that was false - it was actually a Stess Test. (Treadmill)* ¶. 63.

12         On or about May 12th, 2008 Plaintiff Actkinson met with a CTS case manager (1)- Mr.

13   Christofferson who said he was asked to review Plaintiff Actkinson's treatment and the events

14   surrounding the question and validity of the discontinuance of his psychiatric medications. Mr.

15   Christofferson said, "One: when a person has a medical file that is as thick as yours its a sign that

16   he is a drug-seeker. Two: you first used methamphetamine intravenously at age eleven. Three: a

17   persons right to coherency and ability to focus with the aid of medications is restricted to those

18   who are involved in schooling and who are programing."-(note: Plaintiff has tried to get involved

19   into educational programs but has been routinely denied, then, his psychiatric medication's were

20   discontinued and a defense to the discontinuation is that he is not involved in, "*schooling and*

21   *who are programing.*" *See #440*.

22                                    ¶. 64.

23         Plaintiff does not agree with the thickness of a person's medical file having anything to do

24   with being a reason to categorizing as being anything and especially so as in being designated as

1    a 'drug-seeker'. Plaintiff's use of amphetamine intravenously at age eleven was involuntary and

2    this fact was told to his youth guidance counselor and he told Mr. Christofferson that he didn't

3    appreciate that thrown into his face against him for this experience was a very traumatic and

4    terrifying crime violently committed against his will. Plaintiff disagrees with the assumption that

5    a persons right to mental health treatment only being a right if that person is going to school or

6    doing certain institutional programs. Plaintiff Actkinson feels that Mr. Christofferson's

7    rationalizations and explanations give more credence to the fact that Mr. Christooferson just

8    being ODOC's slap-stick confirmer, rather than being an unbiased investigator.

9                                ¶. 65.

10          Plaintiff was served with falsified charging papers/documents which give a clear

11    interpretation that Plaintiff Actkinson was being charged with felonious fraud will held at the

12    Multnomah County Detention Center along with bogus behavioral misconduct reports all which

13    surround Plaintiff's typed letter to Senior Assistant Attorney General (1)- Leonard Williamson. *see # 1050, 1051.*

14                              ¶. 66.

15          Plaintiff Actkinson produced, at least, one falsified charging instrument to Ms. Heidi

16    Mackenzie his ODOC SRCI Institutional Counselor that any lay person could easily ascertain

17    was created to convince that a charge of felonious fraud was, indeed, being brought against the

18    *see # 1051.* Plaintiff. The charging instrument showed the charge of felonious fraud and which even gave a

19    number that was identified as a case number for that charge. Plaintiff went on to explain in great

20    detail that he had contacted The Multnomah County Courthouse and had discovered the fake

21    case number was, indeed, only the police report number for an old UUMV-( Unauthorized Use

22    of Motor Vehicle )- charge and showed her how the fake case number and police report number

23    were identical. Plaintiff went on to explain that by ODOC subtracting Good-Time/Earned-Time

24    credits and lengthening his sentence, then, refusing to correct the error after being shown the

See #1050

1    evidence that ODOC should correct this error. Ms. Mackenzie's response was to tell Plaintiff

2    Actkinson that he would need to have Multnomah County admit and to agree to these facts

3    before ODOC would take any step to correct this error. Because the charging instrument was

4    fake no such avenue exists with which Plaintiff Actkinson can reasonably and/or unreasonably

5    put this issue for review and/or remedy except by bringing the issue to light to ODOC and his

6    ODOC Institutional Counselor which did not work. Therefore Plaintiff is in need of addressing

7    this issue in front of this court.

8                                    #. 67.

9         Defendants continue to create circumstances that require Plaintiff to shift his attention to

10   such things as:

11        1.) Funds taken for no reason and/or wrongfully claiming: he purchased store items he

12   did not; subtracting funds for phone experts and materials they would use when he asked, "Since

13   phone calls are recoded is there a way to acquire recordings of calls?" see paragraph #34 lines# 19 & 20.

14   2.) Confiscating then holding his legal work for long periods of time. see# 311, 623, 670, 697, 523, 766-788, 791
     1858-1660 & 458.

15   3.) Plaintiff Actkinson has and is being denied seeing eye-glasses as a punishment. see#471, 1088, 1392

16   ODOC's eye-glass committee identifies this as being a valid denial of seeing eye-glasses.

17        4.) Plaintiff Actkinson is receiving Sanitation conduct orders for not locking his locker

18   which he cannot read the numbers on the combination padlock see#326

19        5.) Confiscating envelopes he just purchased stating the reason that, " his name was not

20   written on them."When you purchase envelopes they do not come with your name or SID

21   number on them. see paragraph #34 lines #6 & 7.
                                                                  outbound    legal + personal
22        6.) Confiscating Plaintiff Actkinson's/inbound mail for any number of false reasonings is
     see# 464,465,297,298,304,302,311,318,324,461,516-519,694,695,918,971,976,1001,1020,1025,1126,1171-1186,
23   rampant.1190,1191,1199,1200,1203,1203,1226-1229,1232,1240,1284-1286,1293,1342,1583,1587.

24        These are only a couple of the many of actions employed to harass and hinder Plaintiff's

1   ability to contact court and to put his case together. This has been a reoccurring tactic employed

2   by the Defendants.

3       7.) Another one of these tactics was to take Plaintiff's right to Good-Time/Earned-Time

4   eligibility away from the Plaintiff after he had already served part of his sentence claiming he

5   was not eligible for any kind of time reduction. When he sent copies of his sentencing order to

6   prove his eligibility he would receive responses like:

7       "...attached a copy of the page from your final judgment order that clearly shows you

8   aren't eligible. If you think that's incorrect, you need to contact the court." only the second page *see #498, 499, 500, 501-938.*

9   of my sentencing order was allowed and Plaintiff's requests for the first page were denied for the

10  purpose that they would not have to follow what that page which clearly showed support of my

11  eligibility. This was done by highlighting a section that states on all sentencing orders which

12  reads: " Based upon factors stated in open court on the record, there are substantial and

13  compelling reasons to order that the defendant **not be considered** for leave from custody,

14  reduction in sentence, work release, alternative incarceration programs, alternative sanctions or

15  programs of conditional or supervised release **except for the following:**" *see # 295.*

16      This is where the Defendants chose to stop reading the sentencing order. However, the *see #500.*

17  orders next line reads: "[x] Good behavior credit (ORS 169.110)" This was the first box of six

18  immediately following the generic sentencing requirements statement. Also, the sixth and last

19  box was selected which reads: "[x] Other: earned time." Plaintiff Actkinson is seeking any and *see #500.*

20  all lost and taken Good-Time & Earned-Time credits lost and/or taken because Plaintiff of the

21  Plaintiff contesting thses tactics and dolus claims which he won and odoc has complied with the

22  correct sentencing sanctions, however, the Defendants have continually retaliated by accusing

23  the Plaintiff with rule violation(s) that he did not commit and are now using these as their reason

24  for subtracting over four months from his original Good-Time/Earned-Time release date. *See # 291, 490-497.*

1                              ¶. 68.

2          Plaintiff is being told in person, "There is not anyone who can treat you at ODOC's Snake

3  River Correctional Institution due to your filing a lawsuit." This is referring to Plaintiff's USDC

4  Case No: 6:08-CV-0187-TC Case Name: Actkinson v. Dr. Shelton et al., So it will be necessary

5  for Plaintiff to seek to be moved to an ODOC institution where he can receive medical and

6  psychiatric treatment. *See #1665, 335, 380, 381, 383, 468, 469, 483, 426.*

7                              ¶. 69.

8          Plaintiff has filed numerous grievances about his legal work being confiscated, being

9  written up for expressing his concerns, and a slew retaliations aimed at instilling fear of

10  retribution for seeking administrative remedies. These are denied and/or returned as follows:

11  "Your grievance is being returned because the rule Inmate Communication and Grievance

12  Review System, Division 109 states 'The Department will not process grievances on claims or

13  issues that the inmate is pursuing in pending litigation in the courts." You stated you have

14  pending litigation in Federal Court on Dr. Gulick.' " This rule 109 is routinely used against *see # 377, 378*

15  grievances filed by Plaintiff. In this specific grievance #2008.05.006 I was explaining that Dr.

16  Gulick override the Emergency Room doctor's prescription of needed medications and after

17  surgery care, I gave as Dr. Gulick's motivating factor as: "may be retaliation due to U.S.D.C.

18  Case # 6:08-CV-0187-TC a federal case which I was forced to file to protect myself from his

19  purposefully employing tactics to torture and maim me." Under Rule 109 Grievance Review *see #377, 378.*

20  System (3) (f) reads: *See grievances*

21          "Claims or issues that the inmate is pursuing in pending litigation in state or federal

22  courts; or" after reading the complete rule and its definitions it is plain that an inmate cannot

23  seek remedy through the grievance system if you are seeking remedy through a court process.

24  Plaintiff has been denied grievances and verbally told that, "You have abused the grievance

1    process." Under rule 291-109-0180 (Abuse of Grievance Review System) it states: *See # 1140.*

2        "(1)    An inmate shall submit no more than three inmate grievances in any one week or

3    eight in any calendar month, unless a valid justification exists. Grievances submitted in excess of

4    three grievances in any one-week or eight in any calendar month will be returned to the inmate

5    without further processing noting that he/she has abused the grievance review system." The

6    Defendants have violated the rights of the Plaintiff in such a malevolent manner that it more than

7    any inmate could withstand. Plaintiff Actkinson suffers from several mental health disorders and

8    he has also recently been denied all treatments to address his disorders so where any other inmate

9    could be deemed to be accountable to normal procedures Plaintiff Actkinson is trying to do

10   everything he can while incapacitated by his mental health disorders and while the defendants

11   are purposefully with drawling any kind of treatment whatsoever. Under these conditions and the

12   depth with which the department of corrections is creating and carrying out grievable issues

13   against Plaintiff Actkinson there is no way the inmate legal assistants can continue to help

14   Plaintiff Actkinson put his issue's before this court. Of course, we can help him in general ways

15   and we will continue to do so. *See responses to grievances* *See # 1352.*

16                                    *85. 70.*

17        On June 25th,2008 Plaintiff Actkinson was seen by Defendant Corvino who asked

18   Plaintiff Actkinson, "How are you doing? How is your medication working??" Plaintiff

19   Actkinson told him, "I am not doing good and the medication that I getting is not helping at all

20   and I want to be taken off of it. I need help because all the officers keep telling me I am not

21   focusing. I keep getting direct orders to go asleep." Defendant Corvino replied, "I can up your

22   current medication." Plaintiff answered, "I just told you it doesn't work and; Dr. Elliot Blakeleas;

23   nurse Saighto; and nurse Fritz have all said I did much better on my ADD/ADHD medication.

24   You said, "If those who know you say you do better on your ADD/ADHD medication then I

1    leave you on it." Plaintiff Actkinson went on to explain, " <u>that numerous mental health and</u>

2    <u>physical health personell have advised me to ask about a medication called</u> **Strattera**, <u>a new</u>

3    <u>ADD medication if I was to be denied his ADD/ADHD medication.</u>" He replied, "<u>They should</u>

4    <u>not say anything to you about any medications.</u>" At this point Plaintiff was dismissed from the

5    video interview room. *See # 386-388, 401, 541-543, 1651, 1652 .*

6                                                   ※.

7    ~~STRIKE~~

8                                              ¶. 71.

9           FIRST CLAIM FOR RELIEF: 8th Amendment Violations
                              All Defendants Except State of Oregon
10                            Delay and denial of Medical Care: <u>Medical</u> & <u>Psychiatric</u>
     No.1)**Psychiatric Care:**Failure to administer *court ordered* psychiatric medication & substituting
11          insufficient dosages of (Ritalin) instead of (Dexedrine); enforcement of Court's order.
     No.2)**Medical Care:**Removed Plaintiff from Nuerontin although nothing was substituted for this
12          urgent medication. Plaintiff must be prescribed the appropriate medications.

13                                             ¶. 72.

14                                                      71
            Plaintiff realleges paragraphs 1 through and including ~~77~~ as if more fully set forth herein.

15                                             ¶. 73.

16          Plaintiff suffers from serious medical conditions, also; Plaintiff suffers from some serious

17    psychological disorders.

18                                             ¶. 74.

19          Unless properly diagnosed and treated, Plaintiff's serious medical conditions lead to

20    serious needless suffering, protracted pain and loss of physical abilities.

21                                             ¶. 75.

22          Unless properly diagnosed and treated, Plaintiff's serious psychiatric conditions lead to

23    serious and needless suffering, protracted pain and loss of social abilities, and has great difficulty

24    maintaining personal relationships and great difficulties with simply completing tasks. The basic

1    qualities of life are severally compromised. Furthermore, the Plaintiff's psychological and

2    physical maladies have worsened due to the lack of quality of care and additional treatments are

3    likely to be added to his needs.

4                                          76.

5        All Defendants have, at all times relevant, been deliberately indifferent to the serious,

6    physical and psychological needs of Plaintiff.

7                                          77.

8        All Defendants acted throughout Plaintiff's incarceration at issue with conscious

9    disregard of the substantial risk of serious harm to the health and life of Plaintiff caused by their

10   failure to properly diagnose and/or to treat Plaintiff's serious medical conditions and further by

11   intentionally diminishing Plaintiff's serious mental illness and deficits.

12                                         78.

13       The acts and omissions of all Defendants, at all times relevant, are lacking in sound

14   medical judgment and are professionally / medically unacceptable under the circumstances.

15                                         79.

16       The acts and omissions of all Defendants with respect to the treatment and of Plaintiff's

17   serious psychological diagnosis of: Attention Deficit Disorder/Attention Deficit Hyperactivity

18   Disorder-(Combined Types), have been, at all times relevant, a substantial departure from

19   accepted professional judgment, practice and/or standards of care.

20                                         80.

21       The acts and omissions of all Defendants in failing to properly treat Plaintiff's serious

22   psychological deficits has been, at all times relevant, based upon Defendants' attempts to avoid

23   the expense of providing treatment, their perceptions of Plaintiff's mental state, their defiance of

24   court orders and other invalid reasons, rather than upon valid medical reasonings.

1                               81

2          All Defendants have, at all times relevant, acted in bad faith in refusing to properly treat

3    Plaintiff's serious medical and psychological conditions based upon financial and other improper

4    reasons, rather than valid medical reasons and or penological interests.

5                               82

6          The acts and omissions of all Defendants in failing to properly and professionally treat

7    Plaintiff's serious conditions amounts to the knowing, unnecessary and wanton infliction of pain

8    and suffering upon the Plaintiff.

9                               83.

10         It is, and has been since 1976, clearly established that prison officials may not act with

11   deliberate indifference to the serious medical needs of prisoners.

12                              84.

13         It is clearly established that prison officials act with deliberate indifference to the

14   prisoners' serious medical needs when they deny, delay or intentionally interfere with necessary

15   medical treatments.

16                              85.

17         As a result of the acts, omissions, delays and denials of medical treatment for Plaintiff's

18   well established and serious medical/psychological conditions Plaintiff has/is suffering avoidable

19   and needless pain, emotional distress, physical & psychological punishment, the permanent loss

20   of the quality life during these unnecessary tribulations from: February 10th, 2006 and which has

21   been ongoing to date. Plaintiff has not only requested the proper treatments but also the just and

22   proper counseling for his conditions, however, these identified treatments of counseling have

23   been denied, thus, the Plaintiff will require extensive future expenses associated with counseling,

24   job training/retraining, life skills and the inability to obtain a significant range of employment

1    and or living situations. Additionally, the Plaintiff will require extensive future expenses to

2    address the ongoing nature of his conditions, expensive psychiatric treatments, medications, and

3    whatever else may be deemed necessary and or appropriate by the experts. Plaintiff reserves the

4    right to amend this complaint as expert evidence provides updated scientific advancements and

5    or information. Plaintiff also suffered significant and serious non-economical damages which

6    will be more specifically proven at trial.

7                                    86.

8            Because Defendant's treatment not only violated the existing medical standard of care

9    found in the community but it was also deliberately, purposefully and intentionally abusive,

10   neglectful and punitive in nature. At all times the Defendants acted with deliberate indifference

11   to the Plaintiff's serious medical needs and requirements. Plaintiff seeks punitive damages

12   against each named Defendant.

13                                    87.

14                   SECOND CLAIM FOR RELIEF: 8th Amendment
                        All Defendants Except State of Oregon
15              Delay and denial of Medical Care: Failure to Treat, Failure to Treat Pain

16

17                                    88.

18           Plaintiff realleges the claims in paragraphs 1 through 87 as if more fully included.

19                                    89.

20           Plaintiff complained repeatedly of increasing pain, headaches and other painful

21   symptoms of his conditions including the exacerbating effects and adverse reactions caused by

22   the ODOC's unauthorized supplemented medication: **Ritalin**. These actions also violated the

23   Plaintiff's: *Court-ordered* Attention Deficit/Attention Deficit Hyperactivity Disorder-(**combined**

24   **types**) medication of: **Dexedrine**. All claims by Plaintiff went ignored by Defendants.

¶. 90.

Defendant's treated Plaintiff's complaints of pain, adverse effects and other

symptomatology as if Plaintiff were a hypochondriac and failed to take his complaints seriously

as they disregarded him as "a drug-seeker" or suffering emotional/mental delusions.

¶. 91.

As a result of Defendant's failure to diagnose, treat and evaluate Plaintiff's complaints

Plaintiff suffered needless pain and suffering. At all times the Defendants acted with deliberate

indifference to the Plaintiff's serious medical needs and requirements.

¶. 92.

Because Defendant's treatment not only violated the existing medical standard of care

found in the community but it was also deliberately, purposefully and intentionally abusive,

neglectful and punitive in nature. At all times the Defendants acted with deliberate indifference

to the Plaintiff's serious medical needs and requirements. Plaintiff seeks punitive damages

against each named Defendant.

¶. 93.

THIRD CLAIM FOR RELIEF: ADA Claim
Defendant State of Oregon
Discrimination against an individual with a disability

¶. 94.

Plaintiff realleges the claims from paragraphs 1 through 93 as if more fully set forth

herein.

¶. 95.

The State of Oregon, by and through the Oregon Department of Corrections, has a policy

of failing to treat or evaluate patients who are considered mentally ill or who suffer from a

serious, chronic mental illness. This policy is manifest by the failure to respond to written

1  communications by inmates, failure to treat objective and or subjective symptoms of both

2  physical and or psychological injuries or illnesses, punishing the mentally ill by forcing them

3  into isolated and restricted housing units such as: IMU, DSU, PCU and SMU for even minor

4  violations of policy and procedure, failure to provide a regular and uninterrupted anti-

5  depressants, anti-psychotics and other medications needed to control mental illness, failure to

6  provide any medical and or psychological care or treatment in these special housing units and

7  generally ignoring serious complaints of both physical and psychological ailments because the

8  individual has a diagnosis of a mental illness.

9                              92. 96.

10       Defendant State of Oregon is a public entity obliged under law to provide equal

11  accommodation, benefits, services, programs and activities to all inmates within its care.

12  Defendant State of Oregon is required to make reasonable accommodation for benefits,

13  programs, services and activities for all qualifying disabled inmates. These services include the

14  following of Court Orders.

15                              80. 97.

16       The acts and omissions of Defendant State of Oregon in establishing, modifying,

17  maintaining and applying the a de facto policy of failure to adequately treat the medical/mental

18  needs of the mentally is inherently discriminatory against mentally ill patients and denies those

19  inmates medically/mentally necessary treatment based solely upon their disability. ODOC's

20  policy of failure to adequately treat the medical/mental needs of mentally ill inmates fails to

21  accommodate the disabilities of Plaintiff herein by denying adequate, necessary, proper and

22  medically/mentally acceptable diagnosis and treatment of Plaintiff's serious medical and

23  psychological conditions.

24                              98.

1    The delay and denial of medical/mental care of
2    Plaintiff's serious medical/mental conditions herein
3    was a result of his mental illness and the discriminatory
4    behavior by ODOC staff by refusing to comply with
5    Court ordered medications and by sending him to
6    restrictive housing, "the hole" - (D.S.U.), threatening to
7    punish him, threatening to "take his medications away",
8    advising contracted specialists to "not prescribed this or
9    that medication", "this or that treatment", by refusing
10   him proper and adequate medical and psychological
11   treatments by patronizing him, by calling him "a drug-
12   seeker" and considering him to be a hypochondriac.
13
14       WHEREFORE, Plaintiff prays for judgment
15   as follows:
16
17   #1. On Plaintiff's first and second claims for relief
18   against all Defendants excepting the State of Oregon, Plaintiff
19   prays for judgment in his favor unspecified sum to be
20   proven at trial for non-economic damages; punitive
21   damages of unspecified sum to be proven at trial per
22   each individual and attorney fees and costs; the Enforcement
23   of Court Ordered - Stay of ADD/ADHD medications and for the
24   court to appoint an impartial psychiatrist to meet with
25   Plaintiff and prescribe treatment for Plaintiff and for
26   the court to enforce said prescribed treatment.[DEXEDRINE]

**#2.** On plaintiffs Third claim for relief against State of Oregon, plaintiff prays for judgment in his favor of unspecified sum to be proven at trial in economic damages plus an unspecified sum to be proven at trial for non-economic damages, and punitive damages of unspecified sum to be proven at trial per each individual and attorney fees and costs.

**#3.** Plaintiff prays for judgment in his favor of:
$1,020.00 — One Thousand Twenty dollars for theft of his medical devices. Of economic damages to be proven at trial total amount against all defendants.

**#4.** Plaintiff prays for judgment in his favor of:
$220.48 — Two Hundred Twenty dollars and fourty-Eight cents for theft and illegal Confiscation of OOC store bought items of economic damages to be proven at trial total amount against all defendants.

**#5.** Plaintiff prays for judgment in his favor of the correction to his release date releasing him on: 01-11-09. If the Release date of: 01-11-09 is not forthcoming Plaintiff will pray for judgment in his favor of: $800.00 — Eight Hundred dollars per each day plaintiff is

Page 37 of 38 -- Complaint

1  held past : 01-11-2009 total amount against all
2  defendants.

3
4  #6. Such other relief as is just and equitable.

5
6
7
8  Respectfully Submitted this 19th day of
9  October , 2008.

10
11
12
13      Timothy T. Actkinson SID# 7854875
14      'Pro Se Litigant'
15  ODOC- Snake River Correctional Institution
16      777 Stanton Boulevard
17      Ontario, Oregon. 97914-8335
18      (541)- 881- 4537
19
20
21
22
23
24
25
26

Page 38 of 38 -- Complaint

Contents of supporting documentations

1

2  Pages #1 (through) #250: medical records pertain-

3  ing to time period beginning on February 10th, 2006

4  and ~~coming~~ ending in June(s) July 2008.

5

6  Pages #251 (through) #668: Consist of Inmate

7  Communications; Grievances; Grievance Appeals;

8  Interoffice communications; confiscation slips;

9  Cell shake down reports; misconduct reports;

10  Receipts; court orders; declartions; and other

11  documentations.

12

13  I tried to attach page numbers to para-

14  graphs to support all claims. I apologize

15  for it being so disorganized but

16  this is as best as I could do in my

17  current dilemma of being without;

18  ADD/ADHD meds, eye glasies, etc

19

20                    Respectfully,

21

22            X Tim Atkinson

23              Tim Atkinson

24              10—   —08

25

26

Page __1__ of __1__ -- Contents of Supporting Documents

Form 03.010 9/98

Declaration of Mailing

I, Tim Actkinson, do declare that:

I mailed 3 large manilia envelopes containing my
amended complaint with 1668 pages of supporting
documentation to both of the following persons:

#1) United States District Court of Oregon
    405 East Eighth Avenue Suite #2100
    Eugene, Oregon 97401

#2.) Kristin A. Winges - deput Attorney General
     1162 Court street N.E.
     Salem, Oregon. 97301-4096

On the date identified below.

    I hereby declare that the above statement is
true to the best of my knowledge and belief, and
that I understand it is made for use as
evidence in court and is subject to penalty
for perjury I sign to this fact

                              X Tim A. Actkinson
Dated this 19th day of October 2008 Timothy t. Actkinson
                              7851875 Phase
                              777 Stanton blvd.
                              Ontario, OR 97914

Page 1 of 1 -- Declaration of Mailing

Form 03.010 9/98